# Richmond

## Walton L. Meade, Administrator of the Estate of William Moses McCoy, Deceased v. James L. Meade, Administrator of the Estate of Bobby L. Meade, Deceased.

March 7, 1966.

Record No. 6111.

Present, Eggleston, C. J., and Buchanan, Snead, I'Anson, Carrico and Gordon, JJ.

Leslie M. Mullins (*William J. Sturgill; Greear, Bowen, Mullins, Winston, Pippin & Sturgill,* on brief), for the plaintiff in error.

Carl E. McAfee (*Hugh P. Cline; Cline & McAfee,* on brief), for the defendant in error.

EGGLESTON, C. J., delivered the opinion of the court.

On November 16, 1963, at about 10:30 P. M., Bobby L. Meade, aged 17, was a guest passenger in a car driven by William Moses McCoy, aged 29. As the car was proceeding eastwardly along Alternate Route 58, between Norton and Coeburn in Wise county, it ran off the northern or left-hand side of the highway, plunged into a ravine, and was demolished. Both the driver McCoy and Meade the passenger were killed instantly. Another passenger, Frankie R. Large, aged 15, survived the crash. Meade's administrator sued McCoy's administrator for damages for Meade's wrongful death, claiming that McCoy was guilty of gross negligence in the operation of the car which proximately caused the accident and Meade's death. Code, § 8-646.1 (Repl. Vol. 1957). The plaintiff administrator recovered a verdict and judgment of $12,000, and the defendant administrator has appealed.

In this appeal the defendant contends that the lower court erred:

(1) In not striking the plaintiff's evidence or in not setting aside the verdict, because the evidence fails to show that the driver McCoy was guilty of gross negligence, and because it shows, as a matter of law, that the plaintiff's decedent Meade was guilty of contributory negligence or voluntarily assumed the risk in riding with McCoy when he knew that McCoy was intoxicated and would not or could not drive properly.

(2) In admitting over the defendant's objection certain evidence as to the speed of the car shortly before the crash.

(3) In its rulings on the instructions.

(4) In not sustaining the defendant's objection to the improper argument of counsel for the plaintiff before the jury.

[1] The principal facts are not in dispute. About 7:45 on the night of the accident, Meade and Large met McCoy at a beer tavern. McCoy invited them to ride around with him. During the next three hours they visited several taverns, at each of which they drank several beers together. At one of these places Meade remarked to Large, "Frank, you and Mose are going to get drunk if you don't watch out." However, the three entered the automobile and proceeded to another tavern where they again drank beer together.

After they had visited their last tavern they proceeded eastwardly along Alternate Route 58, with McCoy at the wheel, Meade on the front seat next to him, and Large lying on the rear seat. In the direction in which the car was proceeding the road is downgrade and curves to the right. The paved portion of the road is designed for two lanes of travel in each direction and is flanked on each side by a dirt shoulder. A highway sign indicates a maximum safe speed of 35 miles per hour for a car approaching the curve and proceeding in the direction in which this car was going.

A state trooper who investigated the accident testified that the marks on the road showed that as the car neared the curve it ran off the pavement on the right-hand side, continued along the shoulder for about 75 feet, veered back to its left across the pavement, ran off the pavement on the left-hand side, crossed the dirt shoulder, and plunged down a 25-foot ravine on the left. After the car left the highway it struck and severed a sapling about six inches in diameter before falling into the ravine.

Large testified that just before the crash he "heard the wheels crying" and realized that they were "going fast." When he said

something to Meade "about Moses' driving" Meade replied, "Ah, maybe he'll be all right; he's not that drunk."

Sherrill Owens, a youth 14 years of age at the time of the accident, testified that while he was standing "across the railroad track" he heard the "roaring of a car coming down the highway;" that he heard the tires "squealing" as the car aproached the curve, and that immediately thereafter he heard it strike the trees on the side of the road. He went to the scene and found that the McCoy car had been involved in the accident.

Over the objection of the defendant this witness was permitted to testify that the car which he heard passing along the highway "was going over eighty" miles per hour. Although this witness admitted that he had never driven an automobile, he said that he had frequently ridden with his father and from this experience was able to determine the speed of the McCoy car as it passed along the highway.

Samples of the blood of McCoy and Meade were taken from their bodies at the hospital shortly after they had died. The blood from McCoy's body showed "an alcohol level of 0.20% by weight" and that of Meade "0.10 by weight." There was medical testimony that according to McCoy's blood sample "he would appear to any observer, if the observer was also sober, to be under the influence. His abilities to handle machinery, motor cars and so on would be reduced. Whether or not he would stagger would be a question that only by observation you could determine."

From this evidence we think a jury question was presented as to whether McCoy was guilty of gross negligence in the operation of this car at the time of the accident. The jury could infer from the physical evidence that the car was proceeding at a high rate of speed as it approached the curve and ran off the highway.

It is true that the fact that a car runs off the paved portion of the road onto the shoulder at a high rate of speed is not sufficient to establish gross negligence of the driver in the operation of the vehicle. *Richter, Adm'r v. Seawell, Adm'x*, 183 Va. 379, 32 S. E. 2d 62; *Grasty, Adm'r v. Tanner, Adm'r*, 206 Va. 723, 146 S. E. 2d 252, decided January 17, 1966. Yet when these physical facts are coupled with evidence that the driver was intoxicated a jury would be justified in finding that he was guilty of gross negligence in the operation of the car. It is a matter of common knowledge that an operator of an automobile may become incompetent and reckless from intoxication. *Kissinger v. Frankhouser*, 4 Cir., 308 F. 2d 348, 351. As it said in 8 Am.

Jur. 2d, Automobiles, etc., § 513, p. 74, "[T]he fact of the driver's intoxication is to be considered along with other circumstances in the determination of the gross negligence or wilful or wanton misconduct of the operator."

Similarly, we think a jury question was presented as to whether the plaintiff's decedent was guilty of contributory negligence in riding in the car with McCoy under the circumstances related. We have several times said that a guest may be guilty of contributory negligence if he knows or reasonably should know that his driver had been drinking intoxicating liquor to an extent likely to affect the manner of his driving and voluntarily continues as a passenger after a reasonable opportunity to leave the automobile. *Seaboard Air Line Ry. Co.* v. *Terrell*, 149 Va. 344, 354, 355, 141 S. E. 231; *Yorke* v. *Maynard*, 173 Va. 183, 188, 3 S. E. 2d 366, 369; *Bates, Adm'x* v. *Thompson*, 200 Va. 501, 506, 106 S. E. 2d 728, 732.

However, in *Yorke* v. *Maynard, supra,* we pointed out that the fact that the host had been drinking and the guest had knowledge of this fact is not sufficient to establish contributory negligence as a matter of law. 173 Va. at 188, 3 S E. 2d at 368. See also, *Yorke* v. *Cottle*, 173 Va. 372, 4 S. E. 2d 372. The evidence must go beyond this and show that because of his drinking the driver's ability to drive was impaired, that the guest knew, or in the exercise of ordinary care should have known, this and yet entered or continued to ride in the car. Whether the guest knew or should have known that the intoxicated condition of the driver impaired his ability to drive is ordinarily a question for the jury. 8 Am. Jur. 2d, Automobiles, etc., §§ 537, 538, pp. 94-96.

In the present case we cannot say, as a matter of law, that the plaintiff's decedent knew or should have known that McCoy's ability to drive the car was impaired and thereafter continued to ride in the car. There is no evidence that McCoy drove recklessly or showed any unfitness to drive as the trio proceeded from tavern to tavern. Meade's remark to Large that he and McCoy were "going to get drunk if you don't watch out," did not necessarily indicate that McCoy's ability to drive was then impaired. Not until the instant before the crash did it appear to Large, the surviving passenger, that the car was being driven at a reckless speed. Large's remark to Meade about the manner in which McCoy was driving brought the response that McCoy was not too drunk to drive. Thereafter Meade had no opportunity to leave the car.

■ What we have said with respect to the defendant's claim that the plaintiff's decedent was guilty of contributory negligence as a matter of law applies to his similar defense of assumption of risk. 8 Am. Jur. 2d, Automobiles, etc., §§ 537, 538, pp. 94–96.

In *Smith* v. *Prater*, 206 Va. 693, 146 S. E. 2d 179, decided January 17, 1966, we held that a passenger in an automobile does not assume the risk of injury from the driver's negligent operation of the vehicle merely because he knows that the driver has been drinking ardent spirits, where there is no evidence that the driver's ability to drive was impaired thereby.

The case of *Arrington, Adm'r* v. *Graham, Adm'r*, 203 Va. 310, 124 S. E. 2d 199, upon which the appellant relies, is readily distinguishable. There a guest got into the automobile after he knew that the host had been drinking heavily, had heard a friend refuse to ride with him for this reason, and had observed that the host had been operating the car improperly. We held that as a matter of law the guest had assumed the risk of injury.

■ We find that the defendant's assignment of error with respect to the admissibility of the testimony of Owens, the 14-year-old boy, as to the speed of the McCoy automobile just before the accident is well taken.

We need not stop to consider whether this boy, who had never driven an automobile, was qualified to judge the speed of the McCoy car. In *Moore* v. *Lewis*, 201 Va. 522, 111 S. E. 2d 788, we pointed out that in order to be competent to testify on the subject the witness must have had a reasonable opportunity to judge the speed of the automobile. Until it is shown that he had such opportunity he is incompetent to give an estimate of the speed. 8 Am. Jur. 2d, Automobiles, etc., § 985, pp. 537, 538; 32 C. J. S., Evidence, § 546 (54), pp. 240, 241.

In the present case the testimony of this witness does not meet this requirement. He testified that while standing "across the railroad track," at some undisclosed distance from the highway, he heard the "roaring of a car coming down the highway," that he "turned toward the noise to see what it was," and "heard tires squealing," that he thought the car "was trying to slow down to get around the curve," and that he heard it strike the trees on the side of the road. From these sounds he estimated that the car was "going over eighty" miles per hour.

It is generally held that a witness who did not actually see the

motor vehicle in movement is incompetent to give testimony based on sound alone as to the speed at which it was moving. 8 Am. Jur. 2d, Automobiles, etc., § 986, p. 539. See also, 32 C. J. S., Evidence, § 546(54), p. 242. Accordingly, we hold that the testimony of the witness that the McCoy car was "going over eighty" miles per hour just before the crash was inadmissible. Since one of the plaintiff's main contentions was that the excessive speed at which the car was being driven constituted gross negligence, the admission of such testimony was prejudicial to the defendant's case.

At the request of the defendant the lower court granted Instruction "E", which submitted to the jury the issue as to whether the plaintiff's decedent had assumed the risk, but refused to grant Instruction "D" on the issue of contributory negligence. While the two defenses are similar, they are not identical. *Arrington, Adm'r v. Graham, Adm'r, supra,* 203 Va. 310, 314, 124 S. E. 2d 199, 202; *Tiller, Adm'x v. Norfolk & Western Ry. Co.,* 190 Va. 605, 612, 58 S. E. 2d 45, 48. Consequently the defendant was entitled to a proper instruction on both defenses.

However, Instruction "D" submitted by the defendant on the issue of contributory negligence was not in proper form and should have been refused. It did not clearly submit to the jury the simple issues whether McCoy's ability to drive the car was impaired by reason of his drinking intoxicating liquor, and if so, whether the plaintiff's decedent knew, or in the exercise of ordinary care should have known, this. Nor did it submit the issue whether the plaintiff's decedent had an opportunity to get out of the car after he became aware of the alleged impairment of McCoy's condition to drive properly.

Complaint is next made that the lower court erred in refusing to give Instruction I, which read thus: "The court instructs the jury that the defendant (*sic*) Bobby Lee Meade, was of sufficient age to be *conclusively presumed* to be capable of assumption of risk and contributory negligence." (Emphasis added.)

This instruction was properly refused. In *Grant v. Mays,* 204 Va. 41, 44, 129 S. E. 2d 10, 12, 13, we pointed out that an infant over fourteen years of age is presumed to have sufficient capacity to be sensible of danger and have the power to avoid it, and that this presumption will stand until overcome by clear proof of the absence of such discretion as is usual with infants of that age. That is to say, the presumption is not conclusive but rebuttable. See also, *Reid v.*

*Medley's Adm'r,* 118 Va. 462, 468, 469, 87 S. E. 616, 618; *Chesapeake & Ohio Ry. Co.* v. *Saunders' Adm'r,* 116 Va. 826, 830, 83 S. E. 374.

The defendant's final contention is that counsel for the plaintiff was improperly permitted to argue before the jury the difference in the ages of McCoy the driver and Meade his guest. It is said that such argument was designed to lead the jury to believe that because of his age Meade was incapable of contributory negligence, whereas since he was over fourteen years of age he was "conclusively presumed" to be capable of such negligence. In effect, this is a repetition of the defendant's contention that the lower court should have granted Instruction I, *supra,* which would have so told the jury. As has been said, such instruction was properly refused. The court's ruling in permitting the plaintiff's argument before the jury was in accord with its refusal to grant such instruction.

For the error of the lower court in admitting the testimony of the witness Owens as to the estimated speed of the McCoy car the judgment is reversed, the verdict set aside, and the case remanded for a new trial in accordance with the principles here stated.

*Reversed and remanded.*