## Salem

### WAYNE CALVIN SHRADER

v.

### COMMONWEALTH OF VIRGINIA

No. 0532-85

Decided May 6, 1986

288

COUNSEL

James E. Cornwell, Jr., for appellant.

John H. McLees, Jr., Assistant Attorney General (William G. Broaddus, Attorney General, on brief), for appellee.

OPINION

**COLEMAN, J.**—In this appeal from a conviction for involuntary manslaughter, we consider whether the trial court erred when it permitted two eyewitnesses to the accident to estimate to the jury the speed of appellant's vehicle. Appellant argues that neither witness possessed the requisite capacity to estimate with accuracy and reliability the vehicle's speed. We find no error and affirm the conviction.

The manner of operation and speed of the appellant's automobile was material to the issue of whether his conduct was willful or wanton or showed a total disregard of the safety and well-being of others. In order for driving an automobile at an excessive speed to constitute the basis for a manslaughter conviction the act

must be "so flagrant, culpable, and wanton as to show utter disregard of the safety of others under circumstances likely to cause injury." *Mayo* v. *Commonwealth*, 218 Va. 644, 648, 238 S.E.2d 831, 833 (1977) (quoting *King* v. *Commonwealth*, 217 Va. 601, 605-06, 231 S.E.2d 312, 316 (1977)). Evidence which tends to prove the rate of speed at which the automobile was driven, if competent, is relevant.

The fatal collision occurred in the Town of Narrows at 4:15 p.m. on March 30, 1984, during daylight, and when the pavement was dry. The collision occurred where Northview Street meets Main Street, forming a T-intersection. Main Street is a paved, two lane road located in a residential area with a posted speed limit of 25 m.p.h. Mrs. Betty Browning, mother of the victim, drove her car down Northview intending to turn left onto Main. She testified that she stopped at the intersection, looked both ways, saw no vehicle approaching from either direction and pulled into Main Street. When she was approximately halfway across the intersection, her automobile was struck directly in the right passenger's door by the left front of appellant's vehicle, causing her car to turn 180° and come to rest on the sidewalk on the Northview side of Main Street. Eric Dewayne Davis, age 9, a passenger in Browning's vehicle, died within moments of the collision from the injuries he received. Both vehicles sustained considerable damage. Prior to impact appellant's vehicle left a single skid mark of 94 feet; after impact it veered to the right, striking a rock wall and tree.

The witness, Robbie Martin, nineteen years old, and a licensed driver, was walking toward Main Street on the left sidewalk of Northview Street about twenty yards from the intersection. He stated that he could see about twenty feet up Main Street in the direction from which appellant was travelling. He testified that before the collision he heard "an engine running real fast . . . like when a car goes real fast." He stated that he then saw appellant's car "about half a second" and observed it "about ten yards" before the impact. Over objection, Martin estimated that appellant's vehicle was "going anywhere between sixty and eighty." In explaining his estimate, Martin stated that it was based upon the distance the car travelled while in his sight.

Mark Wilbur Simmons, the other witness, was driving his truck on Main Street, travelling in the opposite direction from that of

the appellant's vehicle. He intended to turn left onto another road. He testified that when he first observed the other vehicles, at which time he was approximately 300 feet from the Northview-Main Street intersection, the Browning car was pulling out from Northview Street and the top of appellant's car was visible two to three hundred feet distant from the intersection. Only the top was visible because of a "hump" in Main Street. Simmons stated that he looked away "for a second," intending to turn left onto another road, and looked back when the vehicles "were real close . . . a fraction of a second of impact." He observed the impact, glass flying "high in the air" from Browning's vehicle, saw her car turn 180° and come to rest on the sidewalk, observed the skid mark left by appellant's vehicle, and saw appellant's vehicle travel to the right after the impact. He saw the physical damage to both vehicles. Over objection, he estimated the speed of appellant's vehicle at fifty to seventy m.p.h. In an effort to describe what he had observed, Simmons said, "I probably looked away for a second . . . he was on her and the impact was within two or three seconds, at the most." He stated that his estimate of the speed was based on his initial observations, the time within which appellant's vehicle covered the distance between the two points, and the force of the impact.

The Supreme Court of Virginia has held that skid marks or pressure marks, and physical factors associated with impact, including extent of damage to vehicles and property, may be considered as "mute evidence of high speed." *Hogan* v. *Carter*, 226 Va. 361, 368, 310 S.E.2d 666, 670 (1983); *Interstate Veneer Co.* v. *Edwards*, 191 Va. 107, 112, 60 S.E.2d 4, 6 (1950). It is also well established that lay witnesses who observe a vehicle at or about the time of an accident may in certain circumstances give testimony concerning the speed of a vehicle. Both parties agree that the witnesses are competent to testify about their observations of the physical facts and general movement of the vehicles both before and after the collision. Appellant contends, however, that one of the witnesses, Robbie Martin, should not have been allowed over objection to testify that appellant's vehicle was "going anywhere between sixty and eighty" because he only observed the vehicle momentarily and for a very short distance. Appellant further asserts that the other witness, Mark Wilbur Simmons, should not have been allowed to state his estimate of the speed as "between fifty and seventy miles an hour" because he never observed appel-

lant's vehicle in motion before the collision.

■ Whether a witness has a reasonable basis to formulate a judgment that would not be entirely speculative or conjectural depends upon whether the witness had an opportunity to observe facts which, under the circumstances, gave him sufficient information to warrant his having formed a conclusion or impression of evidential value. In order to be competent to testify to the speed of an automobile, a witness must have had reasonable opportunity to judge the speed of the automobile. *Meade v. Meade*, 206 Va. 823, 828, 147 S.E.2d 171, 175 (1966). Competency is determined by the trial judge based upon all of the circumstances before him and his decision will not be disturbed on appeal absent an abuse of discretion. *Williams v. Williams*, 192 Va. 787, 793, 66 S.E.2d 500, 504 (1951). Unless it is clear that the witness lacked an opportunity to observe and that conclusion is one upon which reasonable men would not differ, the decision of the trial judge as to competency will be upheld on appeal. The brevity of the observation goes to weight and does not affect admissibility. *Moore v. Lewis*, 201 Va. 522, 525, 111 S.E.2d 788, 791 (1960).

The Virginia Supreme Court has held it reversible error to exclude an estimate of speed of a vehicle observed for a brief period for a distance of about 50 feet by a witness without driving experience. *Moore v. Lewis*, 201 Va. 522, 525, 111 S.E.2d 788, 790 (1960) (citing *Burton v. Oldfield*, 194 Va. 43, 48, 72 S.E.2d 357, 361 (1952), which, in view of the circumstances, approved admitting an estimate of speed upon observing the headlights of an approaching car at night 90 feet away). On the other hand, the Court held it reversible error to permit a witness to estimate speed based solely on motor and tire sounds without any visual observation of the vehicle. *Meade*, 206 Va. at 828-29, 147 S.E.2d at 175.

■ Virginia decisions follow the mainstream of authority which holds that any person with a "knowledge of time and distance" may estimate the speed of a vehicle he observes even if the observation is brief. *Moore v. Lewis*, 201 Va. 522, 525, 111 S.E.2d 788, 790 (1960) (quoting 5A Am. Jur. *Automobiles* § 944 (1956)). On the facts presented in the record, the estimate of speed by Robbie Martin based upon his visual observation was not an abuse of discretion.

We reach a similar conclusion with respect to the testimony of Mark Wilbur Simmons. While his testimony is ambiguous on the issue whether and for how long he actually observed appellant's vehicle "in motion," it is clear that his testimony was based on more than motor and tire sounds or on his observation of the impact of the two vehicles. Mr. Simmons first observed appellant's vehicle some two to three hundred feet from the point of the accident. He "looked away for a second" and "he (appellant) was on her and the impact was within two or three seconds, at most." It is reasonable to infer from this testimony that Mr. Simmons actually observed appellant's vehicle "in motion" for a brief period prior to the collision. Even if we assume that Mr. Simmons' observations were confined to a brief view of appellant's vehicle two to three hundred feet away and a second brief view the instant before the impact with no intervening observation of the vehicle as it progressed from one point to another point, we would reach a similar conclusion. We do not read *Meade* to restrict lay testimony of a vehicle's speed to instances where the witness actually observes the vehicle progress from one point to another point; rather, we read *Meade* to require some *visual observation* of the vehicle as a basis for the estimation of speed. Here, Mark Wilbur Simmons visually observed the distance between the two vehicles and mentally noted the lapse of time until impact. His observation formed a sufficient and reasonable basis to support his judgment of the rate of speed at which appellant's vehicle travelled from where first observed. His estimate was more than speculation or guesswork; it was a judgment made by an experienced driver who was familiar with the relation of time and distance. Simmons had noted when he first observed the vehicles that, based upon his experience and first sense impressions, the situation presented no danger if appellant's vehicle had been travelling within the posted speed limit. When Simmons turned and observed the unexpected collision, his observations of the lapse of time, force of impact, flying glass, physical damage to the vehicles, and distance and course which the vehicles travelled before coming to rest were factors actually observed by him to support the basis for and weight to be given his estimation of speed.

Under these circumstances, we are unable to say that the trial judge's ruling allowing Simmons' testimony of a range of speed was an abuse of discretion.

*Affirmed.*

Koontz, C.J., and Moon, J., concurred.