COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Elder and Humphreys
Argued at Alexandria, Virginia


IVELIS LILY CREST
                                             OPINION BY
v.   Record No. 2681-01-4    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                          MARCH 25, 2003
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                     Leslie M. Alden, Judge

          Jerry M. Phillips (Phillips, Beckwith, Hall &
          Chase, on brief), for appellant.

          Amy Hay Schwab, Assistant Attorney General
          (Jerry W. Kilgore, Attorney General, on
          brief), for appellee.


     Ivelis Lily Crest (appellant) appeals her bench trial

conviction for reckless driving in violation of Code § 46.2-852.

On appeal, appellant contends that the trial court abused its

discretion (1) in admitting evidence of driving behavior remote in

time and location; (2) in admitting testimony regarding another

offense for which appellant was not on trial; and (3) erred in

finding the evidence sufficient to support the conviction.  For

the reasons that follow, we affirm the trial court.

                    I.  Factual Background

     Under familiar principles of appellate review, we examine

the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible

therefrom.  See Juares v. Commonwealth, 26 Va. App. 154, 156,
493 S.E.2d 677, 678 (1997).  "In so doing, we must discard the
evidence of the accused in conflict with that of the
Commonwealth, and regard as true all the credible evidence
favorable to the Commonwealth and all fair inferences that may
be drawn therefrom."  Watkins v. Commonwealth, 26 Va. App. 335,
348, 494 S.E.2d 859, 866 (1998).  So viewed, the evidence proved
that on the morning of January 10, 2001 appellant was the
operator of a black truck that caused a four-vehicle accident in
the High Occupancy Vehicle (HOV) lanes of Interstate 95 (I-95)
in Fairfax County.  Traffic was congested, and other drivers were
moving under the speed limit at approximately forty-five miles
an hour.  The road was dry, and the visibility was good "for
miles."  Given these conditions, other drivers saw that traffic
was heavy and "some [cars were] stopping."  As the drivers of
the first three vehicles involved in the accident approached the
Lorton exit in Fairfax County, traffic came to a complete stop
and they stopped their cars.

Magdolna Smith, the driver of the first car involved in the
accident, a Ford Taurus, stated the volume of traffic that
morning was "very heavy," "bumper to bumper" and that for her
entire twenty-mile drive on I-95 she was "not able to go faster
than forty-five miles an hour."  She stated she had a clear view
of the traffic pattern "for miles" immediately prior to the
accident.  Smith noticed the traffic ahead of her stopping, so

-

she applied her brakes and stopped her car.  She had been stopped for approximately one minute before the accident occurred.  The impact of the collision pushed her car out of the left lane, across the right lane of traffic and into the Jersey wall on the far right side of the HOV lanes.  Smith estimated the distance at more than ten feet.

David Parry, the driver of the third car, a Toyota Camry,[1] described the traffic on the morning of the accident as "worse than normal."  Parry stated he had a clear view for "a couple of miles" making it possible to see the traffic pattern.  He saw "a line of cars, redlights, some stopping . . . .  So it was pretty backed up."  Parry explained the accident as follows

> I slowed to a stop, and I braked for the traffic in front of me going north.  I applied the brakes.  There was a red Mazda Miata convertible in front of me.  I stopped 3 to 5 feet before that automobile.
>
> At that time, I noticed a flash of light in my rear-view mirror.  I looked up. Following that there was an impact into my vehicle from the rear.  It threw me into the steering wheel and forced me back into my seat.

The impact of the crash caused Parry's vehicle to leave its lane of travel, cross the right lane of traffic and stop on the far right side of the HOV lanes.  Parry's vehicle was "a total loss."

---

[1] The driver of the second car in the line, a Mazda Miata, was killed at the scene.

Trooper John F. Murphy of the Virginia State Police was also traveling in the HOV lanes on the morning of the accident. When traffic in the HOV lanes came to an abrupt stop, Murphy drove on the shoulder to investigate. He arrived at the accident scene approximately one minute after it occurred. Murphy saw a black truck in the left lane, a Mazda Miata overturned and facing the opposite direction of traffic, and a Toyota Camry and Ford Taurus blocking the right lane and shoulder. After securing the accident scene and tending to the victims, Murphy spoke with appellant about the accident in order to complete a Department of Motor Vehicles accident report. Appellant admitted she was the driver of the black truck. After waiving her Miranda rights, appellant gave Murphy a written statement of her account of the accident. She stated that she was traveling fifty miles per hour prior to the accident and hit the Toyota when it slammed on its brakes.

At trial, over appellant's objection, the Commonwealth elicited testimony from Raymond Smith,[2] who saw appellant driving in the HOV lanes in Stafford County, Virginia, approximately 15 miles before the accident scene. Raymond Smith stated that appellant was driving at "a very excessive speed," faster than the approximately 70 miles per hour he was traveling. He also reported that appellant rapidly approached his car, drove to

_____

[2] Raymond Smith is not related to Magdolna Smith and was driving a different vehicle.

-

within approximately three feet of his rear bumper and then passed him "erratically" when he moved to the right lane. Smith stated appellant continued to drive dangerously close to the rear of other cars and then pass them at the same distance she had passed him. He indicated he could see appellant continue passing other cars for "a long distance" ahead of him and that she was tailgating and weaving in and out of traffic in an effort to pass other drivers. Approximately twenty minutes later Smith saw appellant's truck at the accident scene.

II. Evidence of Driving Behavior Before the Accident

Appellant first contends that King v. Commonwealth, 217 Va. 601, 231 S.E.2d 312 (1977), compels the exclusion of Smith's testimony describing her earlier driving behavior as being too remote. We disagree.

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Jones v. Commonwealth, 38 Va. App. 231, 236, 563 S.E.2d 364, 366 (2002).

> [W]e have held that evidence of excessive speed at one place on a highway is not sufficient, standing alone, to justify an inference of excessive speed at another place. But we have never held that this rule is absolute or that proof of speed at the moment of impact must be conclusive.

Hogan v. Carter & Grinstead, 226 Va. 361, 367, 310 S.E.2d 666, 669 (1983).

-

> [E]xcessive speed [remote] from the place of accident [is] not, _of itself_, sufficient . . . to warrant an inference of excessive speed at the time of the accident. But whether such evidence has probative value is usually within the sound discretion of the trial court, depending on distance from the scene of accident and possibly other factors.

Interstate Veneer Co. v. Edwards, 191 Va. 107, 111, 60 S.E.2d 4, 6 (1950) (emphasis added) (cited with approval in King, 217 Va. at 605, 231 S.E.2d at 315); see also Slate v. Saul, 185 Va. 700, 708, 40 S.E.2d 171, 175 (1946) ("Generally the admissibility of evidence of this kind is a matter of discretion with the trial court, and unless it exercises an arbitrary discretion this court will not interfere."). "We have been reluctant to permit an inference of excessive speed at one place on a highway from evidence of such speed at another place. . . . [H]owever, we have left the admissibility of such evidence to the discretion of the trial court." King, 217 Va. at 604-05, 231 S.E.2d at 315.

Appellant's reliance on King is misplaced. In King, the Supreme Court determined whether the evidence presented at trial was sufficient to sustain a conviction for involuntary manslaughter. The Commonwealth had the burden of proving that King killed the victims accidentally "in the prosecution of some unlawful, but not felonious, act; or in the improper performance of a lawful act." Id. at 604, 231 S.E.2d at 315. The determinative issue was whether King was traveling at an

-

"excessive speed" at the time of the accident.  That evidence

consisted of one witness who had seen King approximately two

miles before the accident and one witness who did not see the

accident, but gave an estimate of King's speed based upon the

sound of the car.  After finding that the second witness was

incompetent to testify "from the sound alone as to speed," id.

at 605, 231 S.E.2d at 315, the Court held,

> the trial court's finding of excessive speed
> at the time of collision is without evidence
> to support it.  The only evidence that King
> was driving in excess of the speed limit
> came from a witness who last saw her vehicle
> before the accident more than two miles from
> the scene of the collision.

Id. (emphasis added).  Significantly, the King Court did not

hold that "the only evidence" of speed was inadmissible; rather,

it held that the evidence, without more, was not sufficient to

support a conviction for involuntary manslaughter.  See id.

In the instant case, the Commonwealth had to prove that

appellant drove her vehicle "recklessly or at a speed or in a

manner so as to endanger the life, limb or property" of another.

Code § 46.2-852 (emphasis added).  Although speed is a factor

that can be considered, appellant need not have been speeding to

be guilty of reckless driving.  Appellant moved to exclude

Raymond Smith's description of her aggressive driving and

speeding on the basis of remoteness in time and distance.  The

trial court found "that [the testimony] is admissible for

whatever weight the fact-finder gives it" and that appellant's

-

"argument goes to its weight and its sufficiency" rather than its admissibility.[3]  While the driving behavior at issue here was undeniably more "remote" in time and distance than that in King, it was probative of more than speed alone.  Smith also testified as to dangerous driving behavior, specifically tailgating and weaving in and out of traffic.  Additionally, Smith saw appellant repeat this driving behavior "for a long distance."  Thus, unlike the witness in King, Smith had the opportunity to see sustained, unchanged driving behavior for a significant period of time and over a "long distance."

Furthermore, Smith's testimony was not the only evidence of speed or reckless driving behavior.  The other drivers stated that they could see the traffic conditions "for miles."  They saw that traffic was slowing and stopping.  Magdolna Smith, Parry and the deceased driver of the Mazda Miata were each able to come to a complete, controlled stop.  Magdolna Smith was stopped for a minute prior to the impact.  Similarly, Parry stated he stopped his car 3 to 5 feet from the Madza Miata.  In addition, the "mute evidence" of the force of the crash showed that the first and third cars in the line were forced out of their lanes of travel and into the shoulder and right travel lane, respectively.  The second car was flipped over and faced

---

[3] We note that the trial court was sitting without a jury. The judge is presumed to know the law and to apply it correctly in each case.  Starks v. Commonwealth, 225 Va. 48, 54, 301 S.E.2d 152, 156 (1983).

-

the opposite direction of travel.  The trial court correctly noted, the issue of remoteness went to the weight of the evidence rather than its admissibility.  We cannot say, on the basis of the record before us, that allowing Raymond Smith's testimony into evidence "for whatever weight" it might be entitled to was an abuse of the trial court's discretion.

III.  Evidence of a Charge not before the Court

Appellant next contends the trial court erred in admitting evidence that she was charged with driving on a suspended license. Because appellant opened the door to this evidence, we affirm.

Appellant's counsel questioned Trooper Murphy as follows:

> Q.  You charged Ms. Crest with reckless driving at the scene, correct?
>
> A.  Yes.
>
> Q.  And you arrested her?
>
> A.  Not due to the reckless driving, she was arrested.
>
> Q.  But you charged her with reckless as a result of the accident?
>
> A.  Yes.
>
> *     *     *     *     *     *     *
>
> Q.  Okay.  You told her she was being charged with reckless driving, didn't you?
>
> A.  Yes.  But that's not why she was placed under arrest.

On redirect, the Commonwealth's attorney asked Murphy why he arrested appellant and he replied, "For driving under a suspended license."  This testimony came after appellant raised the issue of

-

her arrest at the scene of the accident. "[A]ny error regarding this testimony was invited" by appellant during her cross-examination of Murphy. Lane v. Commonwealth, 223 Va. 713, 719, 292 S.E.2d 358, 361 (1982).

### IV. Sufficiency of the Evidence

Finally, appellant contends the evidence was insufficient to support a conviction for reckless driving. "When the sufficiency of the evidence is challenged on appeal, we determine whether the evidence, viewed in the light most favorable to the prevailing party, the Commonwealth, and the reasonable inferences fairly deducible from that evidence support each and every element of the charged offense." Haskins v. Commonwealth, 31 Va. App. 145, 149-50, 521 S.E.2d 777, 779 (1999). "In so doing, we must discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." Watkins, 26 Va. App. at 348, 494 S.E.2d at 866. "The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it." Reynolds v. Commonwealth, 30 Va. App. 153, 163, 515 S.E.2d 808, 813 (1999).

"Irrespective of the maximum speeds permitted by law, any person who drives a vehicle on any highway recklessly or at a

-

speed or in a manner so as to endanger the life, limb, or property of any person shall be guilty of reckless driving." Code § 46.2-852. "The essence of the offense of reckless driving lies not in the act of operating a vehicle, but in the manner and circumstances of its operation. The mere happening of an accident does not give rise to an inference of reckless driving." Powers v. Commonwealth, 211 Va. 386, 388, 177 S.E.2d 628, 630 (1970) (internal citations omitted). However, "physical factors associated with impact, including extent of damage to vehicles and property, may be considered as 'mute evidence of high speed.'" Shrader v. Commonwealth, 2 Va. App. 287, 290, 343 S.E.2d 375, 377 (1986) (quoting Hogan, 226 Va. at 368, 310 S.E.2d at 670; Interstate Veneer, 191 Va. at 112, 60 S.E.2d at 6).

The drivers who survived the accident both stated that the weather was clear and they could see the traffic was very heavy ahead of them. When the traffic stopped, they, along with the deceased driver in the Mazda Miata, were able to bring their vehicles to a controlled stop without incident. Appellant crashed into the stopped vehicles and failed to control her truck. This factor, combined with the evidence of appellant's earlier aggressive driving behavior allowed the fact finder to infer that appellant was not operating her vehicle in a safe manner immediately prior to the accident.

-

Additionally, there was the "mute evidence" of the force of the impact. Appellant hit Parry's car with sufficient force to set off a chain reaction. Parry's car was forced into the adjacent lane of traffic and was "a total loss." The Mazda Miata was flipped over and faced the opposite direction of traffic. Smith's car traveled across the right lane and crashed into the Jersey wall on the far right side of the right shoulder. The trial court found:

> the evidence in this case clearly shows that the traffic was stopped and/or bumper to bumper for a couple of miles, and certainly at least as far as the eye could see. Other drivers were able to stop in time to avoid hitting the cars in front of them, and [appellant] clearly was not.
>
> I conclude that under those circumstances that she was driving her car in a manner or at a speed that was reckless and inconsistent with the conditions of the highway and the roadway at the time, and I am convinced that beyond a reasonable doubt by the evidence that she is guilty of the charge.

Credible evidence supports the trial court's finding.

Accordingly, the judgment of the trial court is affirmed.

<u>Affirmed.</u>

-